DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Christopher Trifari impregnated his stepdaughter, who was 19 when the child was born. At the time, the stepdaughter said the child's father was a person she had met over the internet. She placed the child for adoption. Two years later, following an argument with Mr. Trifari regarding her then boyfriend, the stepdaughter contacted police and told them that her pregnancy had been the result of Mr. Trifari having raped her. Although Mr. Trifari initially denied engaging in sexual conduct with the stepdaughter, following DNA testing that showed a 99.9999% chance that he and the stepdaughter were the child's parents, he pleaded guilty to sexual battery. The trial court sentenced him to three years in prison. This Court affirms the trial court's sentence because it is within the permissible range of sentences for sexual battery and because the trial court did not abuse its discretion in imposing it. *Page 2 
 BACKGROUND {¶ 2} The State originally indicted Mr. Trifari on one count of rape and one count of sexual battery. According to a bill of particulars the prosecutor filed in the trial court, the rape charge was based on an allegation that Mr. Trifari had compelled his stepdaughter to engage in sexual conduct with him through the use of force or threat of force. The sexual battery charge was based on an allegation that he had engaged in sexual conduct with his stepchild.
 {¶ 3} Mr. Trifari eventually entered into a plea agreement with the State, under which it dismissed the rape charge against him and he pleaded guilty to the sexual battery charge. The State requested the trial court to sentence Mr. Trifari to the maximum permissible term of five years in prison on the sexual battery charge, while Mr. Trifari, through his lawyer, requested that the trial court sentence him to community control. The trial court sentenced him to three years in prison.
 {¶ 4} Mr. Trifari has assigned two errors on appeal. Both are challenges to his three-year sentence.
 SECTION 2953.08 OF THE OHIO REVISED CODE {¶ 5} In 1995, the Ohio General Assembly adopted Senate Bill 2, which contained a comprehensive revision of Ohio's criminal code, including an overhaul of its sentencing system. Under the new sentencing system, before a trial court could impose certain sentences within the possible range of sentences for a particular felony, it was required to make certain findings. R.C. 2929.14(B). In addition, defendants and prosecutors were afforded a right to appeal sentences under certain circumstances and, under certain other circumstances, defendants were afforded an opportunity to seek leave to appeal. R.C. 2953.08(A), (B), and (C). Under Section 2953.08(G)(1) of the Ohio Revised Code, as originally enacted by Senate Bill 2, an appellate *Page 3 
court could increase, reduce, otherwise modify, or vacate an appealed sentence "if the court clearly and convincingly [found]" any of a number of things, including that the record did not support the sentence or that the sentence was "otherwise contrary to law." R.C. 2953.08(G)(1) (1997).
 {¶ 6} Courts disagreed about whether Section 2953.08(G)(1) changed the standard applicable to review of criminal sentences from the traditional "abuse of discretion" standard to something else. See Mark P. Painter,Appellate Review Under The New Felony Sentencing Guidelines: Where Do WeStand?, 47 Clev. St. L.Rev. 533, 540-41 (1999). In an apparent attempt to clarify its intention, the General Assembly amended Section 2953.08(G), effective October 2000, to specifically provide that a court reviewing a sentence under Section 2953.08 (A), (B), or (C) should not apply an abuse of discretion standard: "The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either" that the record does not support the trial court's sentencing findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2) (2001).
 {¶ 7} In State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, the Ohio Supreme Court determined that certain parts of the sentencing system enacted by Senate Bill 2, including the requirement that trial courts make findings before imposing prison sentences greater than the minimum available sentence for a particular crime, were unconstitutional. The Supreme Court "severed" the unconstitutional parts and left the remaining parts of the sentencing system intact. Id. at ¶ 97. It specifically held that trial courts now "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences." Id. at ¶ 100. *Page 4 
 {¶ 8} If a trial court has "full discretion" to impose a sentence within the statutory range, it would seem that review of a particular sentence falling within that range would be limited to a determination of whether the trial court abused it discretion in choosing that sentence. In State v. Kalish, 120 Ohio St. 3d 23, 2008-Ohio-4912, a plurality of the Supreme Court reached just that conclusion.Id. at ¶ 17. According to the plurality in Kalish, now, when appellate courts review criminal sentences, they must apply a "two-step approach": "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." Id. at ¶ 26.
 THE FIRST STEP "SHE'S NOT ONLY MERELY DEAD, SHE'S REALLY MOST SINCERELY DEAD" {¶ 9} Mr. Trifari's first assignment of error is that his three-year sentence does not comply with the law. Sexual Battery is a third degree felony. R.C. 2907.03(B). Under Section 2929.14(A)(3) of the Ohio Revised Code, therefore, the trial court could have sentenced Mr. Trifari to one, two, three, four, or five years in prison. Mr. Trifari, however, has argued, in reliance on State v. Fisher, 11th Dist. No. 2002-L-020, 2003-Ohio-3499, at ¶ 12, which, in turn, relied on Section 2929.14(B) of the Ohio Revised Code, that, because the trial court did not find that the shortest prison term available will either demean the seriousness of his conduct or not adequately protect the public from future crime, if the trial court chose to sentence him to prison, it was required to sentence him to one year.
 {¶ 10} Besides not being a decision of this Court, Fisher was decided before State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856. InFoster, the Ohio Supreme Court held, among *Page 5 
other things, that Section 2929.14(B), because it required a trial court to make a finding beyond guilt before imposing a prison sentence longer than the shortest term available, was unconstitutional. Id.
at paragraph one of the syllabus.
 {¶ 11} As noted above, the plurality in Kalish wrote that now the first step in reviewing a criminal sentence is a determination of whether the sentence is "clearly and convincingly contrary to law."State v. Kalish, 120 Ohio St. 3d 23, 2008-Ohio-4912, at ¶ 26. As explained by the plurality, the appellate court "must ensure that the trial court has adhered to all applicable rules and statutes."Id. at ¶ 14. This first step requires the appellate court to review the record of what occurred in the trial court to determine that the trial court fully complied with the law. As recognized by the plurality, whether the trial court fully complied with the law is a "purely legal question." Id.
 {¶ 12} Appellate courts review questions of law de novo. E.g.,Nationwide Mut. Ins. Co. v. Guman Bros. Farm, 73 Ohio St. 3d 107, 108
(1995). In order to determine whether the trial court fully complied with the law in sentencing Mr. Trifari, it is simply a matter of reviewing the transcript of the sentencing hearing and determining whether the trial court made any mistakes, including whether the sentence imposed falls within the permissible range of sentences for a third-degree felony. The plurality in Kalish, however, wrote that, under the first step, the trial court's sentencing "is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." Kalish, 2008-Ohio-4912, at ¶ 14.
 {¶ 13} When the General Assembly wrote, in 2953.08(G)(2), that an appellate court had to make a clear and convincing finding before it could change a criminal sentence, it confused two concepts. Clear and convincing evidence is a quantum of evidence, not a standard of appellate review. "Clear and convincing evidence is that measure or degree of proof which will *Page 6 
produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases."Cross v. Ledford, 161 Ohio St. 469, 477 (1954). Appellate courts, at least in reviewing trial court decisions, are not fact finders and do not make "findings."
 {¶ 14} In the Wizard of Oz, after Dorothy's house fell on the Wicked Witch of the East, the Munchkins called upon the coroner to determine whether the witch who had terrorized them was morally, ethically, spiritually, physically, positively, absolutely, undeniably, and reliably dead. The coroner assured them that he had thoroughly examined her "And she's not only merely dead, she's really most sincerely dead." She was dead. An assurance that she was "most sincerely dead" added nothing.
 {¶ 15} A determination that the trial court imposed a sentence "clearly and convincingly" contrary to law means nothing different from a determination that the trial court imposed a sentence contrary to the law. In particular, in this case, the three-year sentence the trial court imposed on Mr. Trifari was within the permissible range of sentences for a third-degree felony. The trial court's sentence was neither contrary to law nor "clearly and convincingly contrary to law." Mr. Trifari's first assignment of error is overruled.
 THE SECOND STEP ABUSE OF DISCRETION {¶ 16} Mr. Trifari's second assignment of error is that the trial court incorrectly referenced the dismissed rape charge in imposing sentence on him. During the sentencing hearing, Mr. Trifari's lawyer stated, among other things, that "but for the fact that Mr. Trifari was married to [the stepdaughter's] mother, this wouldn't have even been a [crime]. It is only *Page 7 
because she's the stepdaughter and under Ohio law, it doesn't matter. They were both of age of consent but under Ohio law, that doesn't matter."
 {¶ 17} Somewhat later, after the trial court seemed to say that the stepdaughter was under 18 at the time of the sexual conduct and Mr. Trifari's lawyer corrected it, the court said, in apparent reaction to the lawyer's previous statement that the conduct would not have been a crime but for the fact Mr. Trifari was married to the stepdaughter's mother, "Yes, I understand that she was over the age of 18, but your client's entered a plea of guilty to an F-3 to avoid the consequences of a prosecution on an F-1." The court continued:
 He could have rolled the dice and put this in front of 12 people and he could have told his story and they could have — the State would have told its story and we could have seen what happened.
 He chose not to do that. . . . [T]hat's his choice but what it's not his choice then is to come in to this court and say well, yes, but even though I pled guilty, you know, it's only — you are attempting as an advocate to minimize his conduct. I understand that but the fact that you choose to do that does not mean that I have to agree with it.
 {¶ 18} According to Mr. Trifari, the trial court's statement was evidence that it improperly took into account that Mr. Trifari had been charged with rape in sentencing him on the sexual battery charge. Such an inference is not possible from the court's statements. Rather, the court was simply pointing out that, by entering into a plea agreement with the State, Mr. Trifari had given up his opportunity to tell his story to a jury.
 {¶ 19} The transcript of the sentencing hearing indicates that the trial court relied upon a presentence report in sentencing Mr. Trifari, but that presentence report is not included in the record before this Court. See State v. Hultz, 9th Dist. No. 07CA0043, 2008-Ohio-4153, at ¶ 13. Based on the record that this Court does have before it, it cannot conclude that the trial court *Page 8 
abused its discretion by sentencing Mr. Trifari to three years in prison. His second assignment of error is overruled.
 CONCLUSION {¶ 20} Mr. Trifari's assignments of error are overruled. The judgment of the Medina County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
MOORE, J.
 CONCURS IN JUDGMENT ONLY *Page 9